# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# COLUMBIA DIVISION

| | |
|---|---|
| Bruce E. Katz, M.D., P.C., d/b/a JUVA Skin and Laser Center, individually and on behalf of all others similarly situated,  )<br>)<br>)<br>)<br>Plaintiff,  )<br>v.  )<br>)<br>Capital Medical Education, LLC, a South Carolina limited liability company,  )<br>)<br>)<br>Defendant.  )<br>_____)  | Civil Action No.: 3:20-cv-02524-JMC<br><br>**ORDER AND OPINION** |

Plaintiff Bruce E. Katz, M.D., P.C., d/b/a JUVA Skin and Laser Center ("JUVA"), individually and on behalf of all others similarly situated, filed the instant putative class action seeking damages and injunctive relief from Defendant Capital Medical Education, LLC ("CMEL") for alleged violations of the Telephone Consumer Protection Act ("TCPA") of 1991, as amended by the Junk Fax Prevention Act of 2005 ("JFPA"), 47 U.S.C. § 227, and the regulations promulgated under the TCPA by the United States Federal Communications Commission ("FCC"). (ECF No. 1.)

This matter is before the court on JUVA's Motion for Class Certification pursuant to Rule 23 of the Federal Rules of Civil Procedure (ECF No. 11). Specifically, JUVA "requests that the [c]ourt certify the Class, appoint Patrick H. Peluso of Woodrow & Peluso, LLC as Class Counsel, [and] appoint Plaintiff Katz as Class Representative." (*Id.* at 11.) For the reasons set forth below, the court **DENIES WITHOUT PREJUDICE** JUVA's Motion for Class Certification and **DENIES AS MOOT** its Motion to Appoint Class Counsel and Motion to Appoint Class Representative. (ECF No. 11.)

## I. RELEVANT BACKGROUND TO PENDING MOTIONS

A. <u>The TCPA and the JFPA</u>

The TCPA prohibits the faxing of unsolicited advertisements without "prior express invitation or permission" from the recipient. S. Rep. No. 102-178, at 12. Congress' primary purpose in passing the TCPA was to protect the privacy interests of residential telephone subscribers and the public from bearing the cost of unwanted advertising. *Id.* at 1; S. Rep. No. 109-76, at 3. Congress was expressly concerned because "[j]unk faxes create costs for consumers (paper and toner) and disrupt their fax operations." GAO@100, *Telecommunications: Weaknesses in Procedures and Performance Management Hinder Junk Fax Enforcement*, https://www.gao.gov/products/gao-06-425 (last visited July 15, 2021).

In 1992, the FCC released its interpretation of the TCPA, which established an exception for unsolicited advertisement faxes ("junk faxes") between parties with an established business relationship ("EBR"). S. Rep. No. 109-76, at 2. The FCC relied on this interpretation until 2003, when it reevaluated and created a stricter standard for junk faxes. *Id.* at 3. Under this new standard, junk faxes could only be sent with prior express permission in the form of written consent from the receiver, and an EBR (which initially had no specified limit) could only be relied upon by the sender for eighteen (18) months after a purchase and three (3) months after an initial inquiry. *Id.* at 4–5.

After this change, many petitions from businesses requested that the FCC return to its previous interpretation of the TCPA, citing efficiency purposes and the enormous cost of compliance with the new interpretation. *Id.* at 4. This caused the FCC to order a stay on these new rules until 2005. *Id.*

In response, Congress passed the JFPA in 2005, codifying the EBR exception to the ban

2

on unsolicited advertising faxes, allowing those with a business relationship to bypass the written consent rule. S. Rep. No. 109-76, at 1. The JFPA also requires that senders of junk faxes provide notice of a recipient's ability to opt out of receiving any future faxes containing unsolicited advertisements.[1]  *Id.*

As a result of the foregoing, the JFPA expressly prohibits the faxing of unsolicited advertisements. 47 U.S.C. § 227(b)(1)(C). The JFPA defines "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227(a)(5). The JFPA creates a private right of action for a person or entity to sue a fax sender that sends an unsolicited advertisement and allows recovery of either actual monetary loss or $500.00 in damages, whichever is greater, for each violation. *Id.* at § 227(b)(3).

B.     The Parties

JUVA is a "dermatology and cosmetic surgery practice[]" "[l]ocated in the heart of New York City and serving nearby locations like Manhattan." *JUVA*, https://www.juvaskin.com/about/ (last visited Aug. 3, 2021). CMEL provides topical educational courses for aesthetic medical

---

[1] Testimony in the JFPA legislative history outlined concerns about the prior written consent requirement from the FCC. For example, National Association of Realtors Broker Dave Feeken testified that not only would a written consent requirement be costly and time-consuming for businesses, but it would also go against the legislative intent of the TCPA, as both the House and the Senate considered and rejected an express written consent requirement for calls and faxes. *Junk Fax Bill: Hearing on S. 714 Before Comm. on S. Commerce, Sci., & Tourism*, 109th Cong. (2005) (Test. of Dave Feeken, 2005 WL 853591 (Apr. 13, 2005)). News-Register Publishing Company President Jon E. Bladine pointed out that the signed consent leaves open the threat of litigation for every small business. *Id.* (Test. of Jon Bladine, 2005 WL 853593 (Apr. 13, 2005).) Bladine explained that fax numbers change, sometimes people misfile forms, and miscommunications between companies happen. *Id.* Not only that, but companies could use a fax in bad faith to sue another company, hoping they do not have the requisite consent form. *Id.* "[I]f we've messed up that time," he asks, "will we pay, even though we know – and the recipient in all honesty knows – the issue isn't about the fax at all?" *Id.*

practices.  *CME*, https://capitalmedicaleducation.com/aboutus/ (last visited Aug. 3, 2021).

On or about October 31, 2019, JUVA alleges that it received the following unsolicited fax:



(ECF No. 1-1 at 2.)  JUVA asserts that similar unsolicited faxes were sent by or on behalf of CMEL to "more than 40 other recipients without first receiving the recipients' express permission or invitation."  (ECF No. 1 at 4 ¶ 18.)

On July 3, 2020, JUVA filed a putative Class Action Complaint in this court alleging violation of the TCPA.  (ECF No. 1 at 8 ¶ 29–10 ¶ 39.)  Although it was served on August 3, 2020 (*see* ECF No. 5-1), CMEL did not answer the Complaint or otherwise plead.  On December 24, 2020, JUVA filed the instant Rule 23 Motions.  (ECF No. 11.)

## II.    JURISDICTION

This court has jurisdiction over JUVA's claim alleging violation of the TCPA via 28 U.S.C.

4

§ 1331, as it arises under the laws of the United States, and also via 47 U.S.C. § 227(b)(3), which empowers actions under the TCPA "in an appropriate court of th[e] State . . . ." *Id. See also Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 386–87 (2012) ("Nothing in the text, structure, purpose, or legislative history of the TCPA calls for displacement of the federal-question jurisdiction U.S. district courts ordinarily have under 28 U.S.C. § 1331.").

### III.     LEGAL STANDARD

A.     Class Certification

"Rule 23 does not contain a requirement as to when a motion for certification can be made, nor [i]s the [c]ourt [aware of] any cases adopting such a requirement." *Rivera v. Harvest Bakery Inc.*, 312 F.R.D. 254, 263 (E.D.N.Y. 2016). "To the contrary, . . . a district court can certify a class action so long as it finds that the movant has satisfied their burden of proving, by a preponderance of evidence, that the proposed class meets the requirements of Rule 23." *Rivera*, 312 F.R.D. at 263 (citation omitted).

Rule 23(a) provides that certification is only proper if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). In addition to the foregoing requirements, the United States Court of Appeals for the Fourth Circuit has held that a class cannot be certified if the class members are not identifiable or ascertainable, stating ". . . Rule 23 contains an implicit threshold requirement that the members of a proposed class be 'readily identifiable.'" *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014) (quoting *Hammond v. Powell*, 462 F.2d 1053, 1055 (4th Cir. 1972)); *see also Krakauer v. Dish Network, LLC*, 925 F.3d 643, 655 (4th Cir. 2019) ("Under this principle,

5

sometimes called 'ascertainability,' 'a class cannot be certified unless a court can readily identify the class members in reference to objective criteria.'" (quoting *EQT Prod. Co.*, 764 F.3d at 358)).

Once the Rule 23(a) prerequisites are met, the proposed class must still satisfy one (1) of three (3) additional requirements for certification under Rule 23(b). *See EQT Prod. Co.*, 764 F.3d at 357 (quoting *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 423 (4th Cir. 2003)). Career Counseling seeks certification under Rule 23(b)(3); therefore, it must show that "questions of law or fact common to class members *predominate* over any questions affecting only individual members, and that a class action is superior to other available methods of fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b) (emphasis added). "The predominance requirement is similar to but 'more stringent' than the commonality requirement of Rule 23(a)." *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 319 (4th Cir. 2006) (citing *Lienhart v. Dryvit Sys.*, 255 F.3d 138, 146 n.4 (4th Cir. 2001)).

A party must produce enough evidence to demonstrate that class certification is in fact warranted. *See Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). If one of the requirements necessary for class certification is not met, the effort to certify a class must fail. *See Clark v. Experian Information Solutions, Inc.*, 2001 WL 1946329, at *4 (D.S.C. March 19, 2001) (citing *Harriston v. Chicago Tribune Co.*, 992 F.2d 697, 205 (7th Cir. 1993)). The court must go beyond the pleadings, take a "'close look' at relevant matters," conduct "a 'rigorous analysis' of such matters," and make "'findings' that the requirements of Rule 23 have been satisfied." *See Gariety v. Grant Thornton, LLP,* 368 F.3d 356, 365 (4th Cir. 2004) (internal and external citations omitted). While the court should not "include consideration of whether the proposed class is likely to prevail ultimately on the merits," *id.* at 366 (citing *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 177–78 (1974)), "sometimes it may be necessary for the district court to probe behind the

pleadings before coming to rest on the certification question." *Id.* (*citing Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 160 (1982)).

B.     Appointment of Class Representative

"[A] class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *E. Tex. Motor Freight v. Rodriguez*, 431 U.S. 395, 403 (1977) (quoting *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 216 (1974)).  To accomplish this task, the court should appoint as class representative the person or persons who are "most capable of adequately representing the interests of class members."  15 U.S.C. § 78u-4(a)(3)(B)(i).  *See also* Fed. R. Civ. P. 23(a)(4) (class representative must be one who can "fairly and adequately protect the interests of the class").

C.     Appointment of Class Counsel

Rule 23 provides that "[u]nless a statute provides otherwise, a court that certifies a class must appoint class counsel."  Fed. R. Civ. P. 23(g)(1).  "In appointing class counsel, the court:

> (A) must consider: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class; (B) may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class; (C) may order potential class counsel to provide information on any subject pertinent to the appointment and to propose terms for attorney's fees and nontaxable costs; (D) may include in the appointing order provisions about the award of attorney's fees or nontaxable costs under Rule 23(h); and (E) may make further orders in connection with the appointment.

Fed. R. Civ. P. 23(g)(1).  Additionally, "[c]lass counsel must fairly and adequately represent the interests of the class."  *Id.* at 23(g)(4).

## IV.     ANALYSIS

A.     <u>The Parties' Arguments</u>

*1. Motion for Class Certification*

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, JUVA moves the court to certify the following proposed class:

> All persons who (1) on or after July 3, 2016, (2) were sent, by Defendant or on Defendant's behalf, (3) a telephone facsimile message substantially similar to Exhibit A, (4) from whom Defendant claims [i]t obtained prior express permission or invitation to send those faxes in the same manner as Defendant claim[s] [i]t obtained prior express consent to fax the Plaintiff, or for whom Defendant has no prior express permission or invitation.

(ECF No. 11 at 2.)  In support of its Motion, JUVA asserts that it satisfies Rule 23(a)'s criteria because (1) CMEL "sent the same or substantially similar fax advertisements to thousands of class members"; (2) JUVA and the class share "multiple common issues of law and fact"[2]; (3) and CMEL subjected JUVA and the class "to a nearly identical course of conduct." (*Id.* at 4–7.) JUVA further asserts that this case satisfies Rule 23(b) because (1) common questions regarding the transmission of unsolicited fax advertisements predominate over any individual issues and (2) a class action is the more manageable and superior method of adjudicating mass JFPA violations. (ECF No. 11 at 9–10 (citing, *e.g.*, Fed. R. Civ. P. 23(b)(3)).)  In this regard, JUVA asserts that it "seeks statutory damages in the amount of $500 per violation—a small amount that renders

---

[2] JUVA identified the common issues of law and fact as follows:

> (1) Defendant sent them unsolicited fax advertisements; (2) Defendant's fax advertised the commercial availability of property, goods, or services; (3) Defendant sent the faxed advertisements knowingly; (4) Defendant violated the JFPA; (5) the faxes contained a proper opt-out notice; (6) the Defendant should be enjoined from sending unsolicited fax advertisements in the future; (7) the Class is entitled to statutory damages; and (8) the Class is entitled to trebled damages.

(ECF No. 11 at 5.)

individual suits prohibitively expensive." (*Id.* at 10.)

    2.  *Motion to Appoint Class Representative*

JUVA contends that Dr. Bruce E. Katz should be appointed class representative, as he has no conflicts with class members, has "spent significant time and resources in the investigation and prosecution of this action," and "will continue to adequately represent the class." (ECF No. 11 at 7, 10.)

    3.  *Motion to Appoint Class Counsel*

JUVA contends that Patrick H. Peluso of Woodrow & Peluso, LLC should be appointed class counsel, as he has no conflicts with class members, has "spent significant time and resources in the investigation and prosecution of this action," "will continue to adequately represent the class," has "experience litigating class actions, including class actions under the TCPA, and they have the resources necessary to conduct litigation of this nature." (*Id.*)

B.    <u>The Court's Review</u>

    1.  *Motion for Class Certification*

        a.  **Federal Rule of Civil Procedure 23(a)**

Upon consideration, the court is persuaded that JUVA satisfies Rule 23(a)'s enumerated requirements of "numerosity," "commonality," "typicality," and "adequacy." *See* Fed. R. Civ. P. 23(a). More specifically, the court observes that numerosity is satisfied because there are allegedly thousands of members of JUVA's proposed class, who received faxes from CMEL in violation of the TCPA, as amended by the JFPA. (*See* ECF No. 1 at 5 ¶ 22.) Plainly, such a large number makes joinder impracticable.

Second, commonality is satisfied because this factor of Rule 23(a) "requires the plaintiff to demonstrate that the putative class members 'have suffered the same injury.'" *Thomas v. FTS*

*USA, LLC*, 312 F.R.D. 407, 417 (E.D. Va. 2016) (citation omitted). The court is persuaded that JUVA's general claim regarding its receipt of an unsolicited fax is not different from the claims of the absent class members.

Third, typicality, which is similar to commonality, is satisfied here because JUVA and the putative class have an interest in prevailing in similar legal claims. *Nolan v. Reliant Equity Partners, LLC*, 08-cv-062, 2009 WL 2461008, at *3 (N.D. W. Va. Aug. 10, 2009). All class members must eventually establish that they received unsolicited faxes from CMEL.

Fourth, adequacy of representation is satisfied here. JUVA appears to be capable of fairly and adequately representing the interests of the putative class members who received an unsolicited fax.

However, implicit within Rule 23 is the "requirement that the members of a proposed class be 'readily identifiable.'" *Krakauer*, 925 F.3d at 655 (quoting *EQT Prod. Co.*, 764 F.3d at 358). In other words, members of a class must be ascertainable. This does not mean every member of the class needs to be identified at the time of certification; rather, that there must be a "administratively feasible [way] for the court to determine whether a particular individual is a member" at some point. *Id.* at 658.[3] The burden is on the plaintiff as the party moving to certify the class.

In this case, to certify JUVA's proposed class, the court must find that a preponderance of the evidence demonstrates the ascertainability of the persons or entities that were sent a fax by

---

[3] *Cf. Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 359 (3d Cir. 2013) ("[The Third Circuit] ha[s] [] noted that the line dividing ascertainability from predominance is blurry. But despite some overlap, they remain separate prerequisites to class certification and serve distinct purposes: the ascertainability requirement focuses on whether individuals fitting the class definition may be identified without resort to mini-trials, whereas the predominance requirement focuses on whether essential elements of the class's claims can be proven at trial with common, as opposed to individualized, evidence." (internal citations omitted)).

10

CMEL. *E.g.*, *E&G, Inc. v. Mount Vernon Mills, Inc.*, C/A No. 6:17-cv-318-TMC, 2019 WL 4034951, at *3 (D.S.C. Aug. 22, 2019) ("A plaintiff bears the burden of showing by a preponderance of the evidence that class certification is appropriate under Rule 23." (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-351 (2011))). However, in its Motion, JUVA did not suggest any method for the court to determine the identity of the recipients of CMEL's fax. *E.g.*, *Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*, 2016 WL 75535, at *2 (N.D. Ohio Jan. 7, 2016) ("[O]nly persons to whom faxes were 'successfully sent' are proper claimants under the TCPA." (citing *Imhoff Inv., LLC v. Alfoccino, Inc.*, 792 F.3d 627, 632–34 (6th Cir. 2015); *Am. Copper*, 757 F.3d at 545))). In the Fourth Circuit, class certification is inappropriate when "class members are impossible to identify without extensive and individualized fact-finding" as it needs to be administratively feasible for the court to determine which individuals are members of the class. *EQT Prod. Co.*, 764 F.3d at 358. Moreover, "[w]here the practical issue of identifying class members is overly problematic, the court should consider that the administrative burdens of certification may outweigh the efficiencies expected in a class action." *Cuming v. S.C. Lottery Comm'n*, 2008 WL 906705, at *1 (D.S.C. March 31, 2008) (citing *Sanneman v. Chrysler Corp.*, 191 F.R.D. 441, 445 (E.D. Pa. 2000)).

In considering the totality of information presented, without a feasible method for identification of fax recipients, the court cannot ascertain the members of JUVA's proposed class.[4] Therefore, because JUVA is unable to carry its burden of establishing that the class is ascertainable, class certification is inappropriate. *See EQT Production Co.*, 764 F.3d at 358. Accordingly, the court finds that JUVA cannot satisfy all the requirements of Rule 23(a).

---

[4] The court observes that JUVA's failure is more pronounced in the instant situation because Defendant has apparently chosen not to participate in this action.

11

### B. Federal Rule of Civil Procedure 23(b)(3)

Because JUVA cannot satisfy all of Rule 23(a)'s requirements, consideration of whether it meets Rule 23(b)'s requirements of predominance and superiority is futile.

*2. Motion to Appoint Career Counseling Class Representative*

Because the court did not certify a putative class, JUVA's pending Motion to Appoint It Class Counsel is now moot.

*3. Motion to Appoint Class Counsel*

As a result of its decision to deny the Motion for Class Certification, the court finds JUVA's Motion to Appoint Class Counsel is moot.

## V.     CONCLUSION

Upon careful consideration of the entire record and the arguments presented, the court hereby **DENIES WITHOUT PREJUDICE** the Motion for Class Certification (ECF No. 11) of Plaintiff Bruce E. Katz, M.D., P.C., d/b/a JUVA Skin and Laser Center. Further, the court **DENIES AS MOOT** Plaintiff's Motion to Appoint Class Counsel and Motion to Appoint Class Representative. (*Id.*)

**IT IS SO ORDERED.**

*J. Michelle Childs*
United States District Judge

August 6, 2021
Columbia, South Carolina